**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

**AVANTE CONTRACTING CORP and UPLAND SPECIALTY INSURANCE COMPANY,**

                               **Plaintiffs,**

                -against-                      1:23-cv-10842 (ALC) (JW)

**NORTHFIELD INSURANCE COMPANY,**        **ORDER**

                               **Defendant.**

------------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Avante Contracting Corp. ("Avante") and Upland Specialty Insurance Company ("Upland") (each individually a "Plaintiff," and together, "Plaintiffs") bring this action for declaratory judgment against Defendant Northfield Insurance Company ("Northfield"). Through this suit, Plaintiffs seek to resolve an insurance coverage dispute related to the personal injury of a worker, Byron Dario Villa Cuzco ("Cuzco"), who has filed a separate lawsuit (the "Underlying Action") in state court. In relation to this Underlying Action, Plaintiffs now seek an order declaring that: (i) under its insurance policy, Northfield must provide coverage and a defense to Avante; and (ii) that Northfield is liable to Upland for all defense costs Upland has incurred to date in defending Avante in the Underlying Action. Defendant filed a cross-motion for summary judgment requesting an order declaring that it has no duty to defend or indemnify Avante and Riseboro in the Underlying Action.[1] For the reasons set forth below, Plaintiffs'

---

[1] Avante filed a Motion for Partial Summary Judgment, while Northfield filed a Cross Motion for Summary Judgment. Riseboro is not party to this suit and neither party has submitted briefing, arguments, or evidence, as to

motion for summary judgment is **GRANTED** and Defendant's cross motion for summary judgment is **DENIED**.

## INTRODUCTION

The Court begins with an overview of this litigation. To begin, the Underlying Action referenced above was commenced by Cuzco in the Supreme Court of the State of New York, County of Kings under Index No. 515263/2023. In the Underlying Action, Cuzco claims he was injured when he fell through a hole in the floor on the second level of a worksite located at 111 Linden Street in Brooklyn, New York (the "Worksite"). The Worksite is owned by RiseBoro TPT X Housing Development Fund Corp. ("Riseboro"). There is an existing structure on the Worksite that Riseboro retained Plaintiff Avante to perform work on. Avante was thus Riseboro's general contractor. In connection with Avante's work for Riseboro, Plaintiff Upland issued a policy (the "Upland Policy") to Avante, its named insured; Riseboro is an additional insured on the Upland Policy. Avante in turn retained DGA Construction Corp ("DGA") to perform certain tasks on the Worksite. Avante and DGA entered into a subcontractor agreement outlining the tasks to be performed by DGA and requiring DGA to be covered under a separate insurance policy that named Avante as an additional insured. DGA is insured by a policy issued by Defendant Northfield (the "Northfield Policy"). Cuzco is an employee of DGA and allegedly sustained injuries while performing the contracted work. Cuzco then filed the Underlying Action against Riseboro and Avante.

---

why or how this Court can properly reach a non-party in these circumstances. The Court is further concerned that the interests of Riseboro and Avante may not be aligned in the Underlying Action, as the two parties appear to have differenT Counsel. Therefore, the Court addresses in this Opinion only Defendant's request for an Order with respect to Plaintiff Avante, and dismisses Defendant's Motion with respect to Riseboro without prejudice

2

## BACKGROUND

**I. Factual Background**

The following summary consists of only undisputed material facts ("UMF") unless otherwise indicated. These facts are, in large part, copied from the Parties' Rule 56.1 Statements.[2] Where the facts are subject to legitimate dispute, they are construed in favor of the non-moving party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993).[3]

Riseboro hired Avante as the general contractor for the "gut renovation" of a building on the Worksite (the "Project"). DUMF ¶ 14. Avante contracted with Upland for insurance to cover the work it was performing in connection with the Project. DUMF ¶ 8.

### a. *The Upland Policy*

Avante's insurance policy with Upland states, in relevant part, that:

> a. Primary Insurance
>
> This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.
>
> b. Excess Insurance
>
> (1) This insurance is excess over:
>     (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
>         (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
>         (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

---

[2] Both Plaintiffs and Defendant filed Rule 56.1 Statements. Plaintiffs' Rule 56.1 statement, including Defendant's responses (Dkt. No. 29) is referred to hereinafter as "PUMF" and Defendant's Rule 56.1 statement, including Plaintiff's responses, is referred to hereinafter as "DUMF" (Dkt. No. 30-1)

[3] References to the Rule 56.1 statements are presumed to incorporate all documents and deposition testimony cited therein. Unless otherwise indicated, a standalone citation to a 56.1 Statement represents that this Court has overruled any objections and deemed the underlying factual allegation undisputed.

3

      (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

  **(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.**

  (2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Dkt. No. 21-13 at 12 (emphasis added).

  **b.** *Avante's Retention of DGA*

Avante, in turn, hired DGA to perform "Demolition" and "Carpentry" work on the Project, which, in its subcontract with DGA (the "Subcontractor Agreement"), Avante framed as a project to "rehabilitat[e]" the building on the Worksite. DUMF ¶ 15. The Subcontractor Agreement also required DGA to "[p]erform all demolition required for installation of new work," as well as to complete the following tasks: remove "all existing window sash, frames, [] trim and window treatments [and] [p]rovide clean masonry openings," (DUMF ¶ 17); remove the building's existing "wood base and moldings in apartments; linoleum in apartments; exterior doors, frames and trim; ceiling materials in Public Hall areas and stairwells; mailboxes; entrance and vestibule door assemblies; wood joists; light fixates; intercom system; alliances; and other things," (DUMF ¶ 18) and to "[p]rovide temporary shoring before commencement of demolition," (DUMF ¶ 19).

### c. *The Northfield Policy*

The Subcontractor Agreement also required DGA to procure primary and non-contributory commercial general liability insurance that named Avante as an additional insured. PUMF ¶ 3. DGA was insured through Northfield. Dkt. No. 28 at 2. Specifically, DGA had a commercial general liability policy through Northfield that was effective from August 18, 2022 to August 18, 2023 (this was the Northfield Policy). That policy was subsequently amended by a "Limitation – Classification endorsement." The Northfield Policy as amended provided that the insurance coverage applied "to 'bodily injury' and 'property damage' caused by only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements." The operations classified and shown on the declarations page are: "'Carpentry – interior'; 'Dry Wall or Wallboard Installation'; 'Painting – interior – building or structures'; and 'Tile, Stone, Marble, Mosaic or Terrazzo work – interior construction.'" PUMF ¶ 8.

The Northfield Policy also included a Blanket Additional Insured (Contractors) endorsement (the "BAI Endorsement"), which provided that:

> Any person or organization that you agree in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only:
> a. With respect to liability for "bodily injury" or "property damage" that occurs subsequent to the signing of that contract or agreement and while that part of the contract or agreement is in effect;
> b. If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the written contract or agreement applies. Such person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization; and
> c. Subject to the following limitations and conditions on the insurance provided to such additional insured:
> * * * *
>> (4) The insurance provided to such additional insured is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis,

that is available to the additional insured for a loss we cover. However, if the written contract or agreement requires that the insurance provided under this Coverage Part apply on a primary basis or a primary and non-contributory basis, then this insurance is primary to other insurance available to the additional insured which covers that person or organization as a named insured for such loss, and we will not share with that other insurance. But, the insurance provided to the additional insured still is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to the additional insured when that person or organization is an additional insured under such other insurance

\* \* \* \*

### d. *The Accident*

On or around May 12, 2023, Cuzco, as an employee of DGA, was performing work at the Worksite in furtherance of the Project. DUMF ¶ 20. Cuzco was allegedly working on the second floor of the building, but the parties dispute exactly what type of work Cuzco was performing. Therefore, the Court outlines each Parties' recitation of events below.

Avante, pointing to the declaration of its employee, Isaac Djaroud, contends that Cuzco was removing sheetrock and sills from around windows on the second floor, which was part of the carpentry/drywall work DGA had been retained to perform. *See* October 24, 2024 Declaration of Isaac Djaroud ("Djaroud Decl.") (Dkt. No. 21-10) at ¶ 4. According to Plaintiffs, DGA was also contracted to perform tiling work, and, approximately one week prior to Cuzco's accident, during floor tile removal, created a hole in the floor through which Cuzco fell. The removal of the floor tiles was part of the tiling work for which DGA was retained. *Id*. at ¶ 7. Per Plaintiffs, while performing the above-described tasks, Cuzco allegedly fell through that hole, which he (Cuzco) claims lead to his injuries. DUMF ¶¶ 23, 28.

Defendant disagrees with Plaintiffs' account of events and contends Cuzco was performing "interior light demolition" of a bathroom on the second floor of the building on the Worksite, which opened up a hole in the floor that he fell through causing his injuries. DUMF ¶

23. In support of this position, Defendant points to a report about the accident prepared by Avante. *Id*. Following his injury, however it occurred, Cuzco sued Riseboro and Avante in New York State Supreme Court. DUMF ¶ 27. Avante thereafter filed a third-party complaint against DGA, with claims for contribution, indemnification, and breach of contract for failing to procure insurance. DUMF ¶ 30.

    **e.** *The Underlying Action*

On May 23, 2023, Cuzco filed the Underlying Action in New York State Supreme Court, King's County, naming Riseboro and Avante as defendants (the "Underlying Defendants"). Dkt. No. 21-3. Cuzco's Complaint in the Underlying Action (the "Cuzco Complaint") did not allege specific facts about his injury. *See generally*, *Id*. Instead, it pleaded in general and conclusory terms that while Cuzco was "lawfully working on the premises" of the Worksite, "he was caused to fall through unsecured/unguarded/uncovered hazardous opening . . . from a height/elevation while performing labor law protected work . . .[which] caused [him] to be injured." *Id*. at ¶¶ 47–52. The Cuzco Complaint further alleges that Cuzco "was caused to be injured as a result of . . . the careless, reckless and negligent manner in which the Defendant's [sic] owned, managed, maintained, controlled, operated, performed and supervised the aforesaid premises and/or the construction work being done on the aforesaid premises, without the Plaintiff in any way contributing thereto. . . [and]that they violated their duties to persons lawfully on the aforesaid premises and to [Cuzco] in particular, in knowingly, permitting, suffering and allowing the aforesaid premises to be, become and remain in a defective, unsafe and dangerous condition; in knowingly permitting, suffering and allowing [Cuzco] to work in an unsafe work place; and were further negligent in failing to take suitable precautions for the safety of persons lawfully on the

7

aforesaid premises." *Id*. at ¶¶ 53–56

On October 5, 2023, Cuzco served a bill of particulars on the Underlying Defendants. Bill of Particulars, Dkt. No. 27-6. The bill specified that "[Cuzco] was caused to fall from a height from the second floor to the first floor," but did not provide any further details about the accident or the work Cuzco was performing when the accident occurred. *Id*. at ¶¶ 6–10.

### f. *Events Giving Rise to this Action*

Following Cuzco's accident, Upland's third-party administrator reached out to Northfield to request additional insured coverage for Avante under the Northfield Policy in a letter dated July 11, 2023. DUMF ¶ 34. Upon receipt of that letter, Northfield launched an investigation into the incident, which included a request that Plaintiffs provide various documents and information Northfield needed to evaluate the claim. DUMF ¶ 34. In response, Upland's administrator, by email correspondence dated July 17, 2023, provided Northfield with the Subcontractor Agreement and information concerning Cuzco's employment status. DUMF ¶ 36.

On August 8, 2023, Northfield sent Upland a letter in which it declined the request for coverage pointing to the "LIMITATION- CLASSIFICATION" endorsement, which, as outlined above, notes that the policy only applies to bodily injury caused by only those operations which are classified within the policy. [4] PUMF ¶ 5. Northfield's August 8th letter stated that there were a lack of allegations and evidence that the accident was caused by a class of work covered under the policy's insuring agreement, among other things. *Id*. In that same letter, Northfield also indicated that it was going to continue its investigation of the claim. DUMF ¶ 38.

---

4 The Parties dispute whether the August 8th letter was a denial. Plaintiffs contend the August 8th letter was simply a reservation of rights by Defendant, while Defendant contends the letter was a denial. The Court does not resolve this dispute at this time, as it is not necessary to decide the pending summary judgment motions.

8

Northfield claims that during its post-August 2023 investigation, Avante's counsel provided Northfield with Avante's Incident Report and its third-party complaint in the Underlying Action. DUMF ¶ 39. On November 2, 2023, Northfield denied the requested coverage because, among other things, the accident was not caused by a covered operation or class of work. DUMF ¶ 40.[5] Avante and Upland then initiated this declaratory judgment action. The central dispute between the parties is whether the injuries alleged by Cuzco are covered by the Northfield Policy such that Plaintiffs are entitled to defense coverage from Northfield in the Underlying Action. This Opinion and Order resolves that dispute.

## II. Procedural Background

On January 19, 2024, Northfield timely answered the Complaint. Dkt. No. 10. On January 23, 2024, this case was referred to Magistrate Judge Willis for general pre-trial oversight. Dkt. No. 11. The Parties engaged in discovery before Judge Willis. On September 9, 2024 (Dkt. No. 16) and September 12, 2024 (Dkt. No. 17) Plaintiffs and Defendant, respectively, filed motions with this Court requesting a pre-motion conference in anticipating of filing their motions for summary judgment. On September 26, 2024, the Court denied the Parties' request for a pre-motion conference and granted the Parties leave to file cross-motions for summary judgment. Dkt.No. 18. Plaintiffs and Defendant filed their motions for summary judgment on October 24, 2024 and November 25, 2024 respectively, Dkt. Nos. 21–23, 24–29; Plaintiffs filed their opposition briefs on December 24, 2024, Dkt. Nos. 30–31, 29; and Defendant filed its reply

---

5 The Parties dispute whether this was Northfield's first or second denial of coverage. Plaintiffs contend that this was the first and only official denial of coverage by Northfield, while Northfield contends this was its second denial of coverage. Again, the Court does not resolve this dispute at this time, as it is not necessary to decide the pending summary judgment motions.

9

brief on January 17, 2025, Dkt. No. 34.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting A*nderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citation omitted); *see also* Fed. R. Civ. P. 56(c). The non-moving party "may not rest upon mere allegation[s] or denials of his pleadings," *Anderson*, 477 U.S. at 259. Rather, the non-moving party must "designate specific facts showing that there is a genuine

10

issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and these facts must be "admissible in evidence." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (quoting Fed. R. Civ. P. 56(e)). "The mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment," *Anderson*, 477 U.S. at 247 (emphasis in original), and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 50 (internal citations omitted). "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co.*, 2016 WL 4120635, at *4 (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## DISCUSSION

The Cuzco Complaint is silent about the work Cuzco was performing at the time of his injury. Furthermore, the Parties dispute whether Cuzco was performing interior light demolition of the bathroom or the removal of sheetrock and windowsills in relation to interior carpentry/drywall work. Dkt. No. 23 at 6. In addition, the Parties disagree over what qualifies as "demolition." Upon review of the Parties' Motions, as well as all documents in support thereof, the Court concludes that the work performed by Cuzco as recounted by Plaintiff would not qualify as "demolition[6]" in the traditional sense, but could instead be "removal" work related to

---

[6] At least one other court in this district has considered and decided what constitutes demolition in a dispute involving a workplace injury. *See Travelers Indem. Co. v. Trisura Specialty Ins. Co.,* 2024 U.S. Dist. LEXIS 101953, at *9 (S.D.N.Y. June 7, 2024). In *Travelers*, the court determined that "under New York law, [c]ourts may refer to the dictionary to determine the plain and ordinary meaning of contract terms." *Id*. (citing *Dish Network Corp. v. Ace Am. Ins. Co.*, 21 F.4th 207, 211 (2d Cir. 2021) (internal quotation marks omitted, alteration in original).[6] There, looking at Merriam-Webster Dictionary and the Oxford English Dictionary, the Court held that demolish was defined as "to tear down, raze, as in demolish a building, or to break to pieces," as well as "[t]o pull or knock down (a building or other structure); to reduce to rubble or ruins; (more generally) to break violently into pieces; to smash, destroy." *Id*.; *See also Herbert v. Dryden Mut. Ins.*, 2017 NY Slip Op 50001(U), 54 Misc. 3d 1205(A), at *5 (Sup. Ct.) (defining "demolition" as the "complete tearing down, razing or destruction of [an] entire

11

operations that could be covered by the Northfield Policy, such as drywall or carpentry.[7] As explained in greater detail below, the Court's conclusion means that at the very least, the potential for coverage exists under the Northfield Policy, which means Northfield is required to defend Avante in the Underlying Action. Accordingly, Defendant's claims fail, and its Cross Motion for Summary Judgment is DENIED.[8]

### I. The Northfield Policy Does Not Exclude Coverage for "Removals"

The crux of Defendant's argument is that the Northfield Policy only extends coverage to four types of operations ("i) carpentry; ii) dry wall or wallboard installation; iii) painting; and iv) tile, stone, marble, mosaic or terrazzo work") none of which are applicable here. Dkt. No. 28 at 12. However, the Northfield Policy does not define any of the covered operations or limit them temporally, nor does it expressly exclude removal—or demolition—work in connection with any one of the covered operations from coverage. For these reasons and those stated below, the Court cannot conclude at this time that Plaintiffs have failed to show Cuzco's injury was caused by operations covered under the Northfield Policy. *See Grand Crossing, L.P. v. United States Underwriters Ins. Co., No. 03-CV-5429 (KMK),* 2007 U.S. Dist. LEXIS 94244 at *4–*5 (S.D.N.Y. Dec. 11, 2007) (holding that plaintiffs had "raised a triable issue of fact that the work at issue was within the scope of the policy," where defendants had failed to show that "its classification limitation endorsements . . . unambiguously exclude[ed] coverage for the work

---

building," and the "deliberate destruction of a building or other structure." (alteration in original). These definitions make clear that pure "demolition" must impact the structure of a building.[6] The Court sees no reason to depart from the above definition or understandings of "demolition" and proceeds with its analysis based on this definition.
7 The Court Notes that carpentry and drywall are not defined in the policy, which further supports its conclusion that removal work related to those operations could be covered under the Northfield Policy.
8 Because the Court finds that coverage or at least the potential for coverage exists, it does not proceed to analyze the Parties' arguments with respect to New York Insurance Law 3420.

undertaken by [plaintiffs] and [thus for the underlying accident in that case]").

As an initial matter, with respect to the undefined operations, Plaintiffs argue that aspects of each of the covered operations entail some form of "removal," or what it sometimes refers to as "demolition" to complete performance. For example, the installation of new drywall may require the removal of old drywall; the installation of new tile in an area may require the removal of old tile; painting an area may require first stripping it of paint, and replacing old carpentry may require the removal of existing carpentry. The Court agrees and finds that Defendant has not shown that its covered operations unambiguously exclude coverage for the work undertaken by Cuzco (to the extent Cuzco was, as Plaintiffs allege, performing carpentry work related to the windowsills). This failure is further exacerbated by the fact that the Northfield Policy does not include temporal limitations. The policy is silent as to whether coverage exists where an injured party initially performs work outside the scope of coverage, but then switches to performing tasks covered by the insurance policy and sustains injuries while performing that covered task.

Defendant contends that Plaintiffs have failed to point to any underlying allegations or evidence showing that the Cuzco's injury was caused by any of the covered operations, and point to the incident report prepared by Avante in support of its position. The incident report refers to Cuzco (and DGA) performing "demolition" work. However, it is unclear whether the documents Defendant points to intend to describe "removals" as described above, or pure "demolition," which is also defined above. Construing this ambiguity against Defendant as the Court must on a motion for summary judgment, Defendant's argument thus fails.

Beyond this initial matter, and as detailed below, there is also a material factual dispute in this litigation; this dispute also prevents the Court from granting Defendant summary judgment.

13

## II. The Type of Work Cuzco Was Performing Presents a Genuine Issue as to a Material Fact in this Dispute

On a motion for summary judgment, "[a] fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kregler v. City of N.Y.*, 604 F. App'x 44, 46 (2d Cir. 2015) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). Here, whether coverage exists under the Northfield Policy turns exclusively on the type of work Cuzco was engaged in when he was injured. Because the parties disagree over what work was being performed, and the Cuzco Complaint is also silent as to the work Cuzco was performing, there exists a dispute as to a material fact between the parties. This material factual dispute means that Defendant's motion for summary judgment must be DENIED.

## III. Northfield has a Duty to Defend Avante

Under New York law, an insurance provider's duty to defend is "exceedingly broad," and is much "broader than its duty to indemnify." *Fid. & Guar. Tnsurance Co. v. Accredited Sur.*, 2025 U.S. Dist. LEXIS 9173, at *9–*10 (S.D.N.Y. Jan. 16, 2025). Therefore, "[e]ven if facts outside the four corners of the pleadings indicate that the claim may be meritless, the duty to defend remains." *Id.* at *10 (quotation marks and citation omitted). Accordingly, "[i]f the underlying complaint, liberally construed, . . . is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false[,] or baseless the suit may be." *Id.* (quotation marks and citation omitted). This "duty applies to named insureds and additional insureds alike, . . . and it attaches upon the filing of any complaint for which there is any possible factual or legal basis on which the insurer might eventually be held to be obligated

14


Case 1:23-cv-10842-ALC-JW    Document 40    Filed 09/30/25    Page 15 of 17

to indemnify." *Id*. (quotation marks and citation omitted).

Here, as discussed above, the Court concludes that it is possible that Avante may be entitled to coverage under the Northfield Policy. The Cuzco Complaint alleges that he is an employee of DGA, was a "laborer" at the Worksite, and was injured at the Worksite. Further, Cuzco could have been involved in carpentry work (under Plaintiff's statement of facts) or light demolition (under Defendant's statement of facts). The light demolition, even under defendant's proffered facts, arguably could have been related to one of the covered operations, such as tile work. Construed liberally, the Cuzco Complaint thus suggests that there is at least a factual basis under which Northfield may eventually be obligated to indemnify Avante (and by extension, Upland). Therefore, Northfield must come forward and defend Avante in the Underlying Action. Accordingly, the Court GRANTS summary judgment to Avante on its request for a declaration that it is entitled to a defense in the Underlying Action.

### IV. Northfield is Liable to Upland for the Costs it has Incurred in Defending the Underlying Action

In general, "[w]hen a policy represents that it will provide the insured with a defense, the policy is as much 'litigation insurance' as it is 'liability coverage.'" *Id*. at *14. Therefore, such a provision in an insurance agreement "may require the carrier to defend additional insureds against meritless claims, including those which it may not be required to pay once the litigation has run its course." *Id*. "Such is the benefit that" the insured bargains for in their insurance policy, and it is not the Court's place to deprive them of that benefit. *Id*.

Here, the Northfield Policy states that it has a "duty" to defend its insured in against any suit seeking damages for bodily injury or property damage in connection with the covered operations. Dkt. No. 21-6 at 22 of 89. It is undisputed that the Subcontractor Agreement

15

obligated DGA to procure primary and non-contributory commercial general liability insurance that named Avante as an additional insured. It is further undisputed that the Northfield Policy states that where a "written contract or agreement require[d] [it to] apply on a primary basis or a primary and non-contributory basis, then [the Northfield] insurance [was] primary to other insurance available to the additional insured." In addition, the Upland policy provides that it is excess over "[a]ny other primary insurance available to [Avante] covering . . . for which [Avante had] been added as an additional insured." It is thus clear from the language of the Subcontractor Agreement and both insurance policies that: (a) the Northfield Policy is primary, and (b) that Avante contracted for Northfield to defend it against suits that fall within the scope of the Northfield Policy. Avante is entitled to the benefit of that bargain. As such, Upland may recoup the costs it incurred in defending the action that Northfield should have come forward to defend. Accordingly, the Court GRANTS summary judgment to Plaintiffs on this issue.

## CONCLUSION

For the reasons stated, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** and Defendant's Cross Motion for Summary Judgment is **DENIED**. By **November 3, 2025**, the Parties shall jointly file a proposed judgment consistent with this Opinion and Order. If the Parties are not in agreement on the costs incurred by Upland in defending the Underlying Action, if any, the Parties shall each file a letter motion with their proposed breakdown of costs to Upland in defending the Underlying Action, including the basis as to why the proposed cost should be reimbursed. Each letter should be supported by affidavits and citations to legal authority where appropriate. Further, the Parties shall propose a date and time for a conference

before the Court to address the propriety of the Court issuing a declaratory judgment with respect to Riseboro who is not party to this suit. Counsel should reach out to Riseboro's counsel to ascertain their availability so that they may also be present for the conference. The Clerk of Court is respectfully directed to terminate the motions at Dkt. Nos. 21 and 24.

**SO ORDERED.**

**Dated: September 30, 2025**

    **New York, New York**

                                          **ANDREW L. CARTER, JR.**
                                          **United States District Judge**